UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doe 1, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Department of Homeland Security, et al., <br><br> Defendants. | 2:20-cv-09654-VAP-AGRx <br><br> **Order Denying Motion for Preliminary Injunction (Dkt. 9).** |

Plaintiffs, Does 1 through 16, filed a Motion for Preliminary Injunction. (Mot., Dkt. 9-1.) Defendants U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Chad R. Wolf, and Tony H. Pham oppose the Motion. (Opp'n., Dkt. 25.) After considering all briefing in connection with the Motion, as well as the arguments advanced at the hearing, the Court DENIES the Motion.

### I. BACKGROUND

Plaintiffs are sixteen first-year student athletes who were admitted at the University of California, Los Angeles ("UCLA") or Loyola Marymount University ("LMU") to study and participate in intercollegiate athletics. (Compl., Dkt. 1 ¶¶ 17–32.) Plaintiffs are residents of Australia, Canada, Great Britain, Israel, Italy, New Zealand, Norway, and Spain. (*Id.*) Each Plaintiff is enrolled in a course of study at his or her respective university. (*Id.*) Each Plaintiff, if able to attend

university in person, would be a member of a National Collegiate Athletic Association ("NCAA") Division 1 team. (*Id.*) At least some Plaintiffs have received scholarships or grants-in-aid to participate in intercollegiate athletics and have turned down opportunities at other institutions around the world in order to play for their respective universities. (*Id.* ¶¶ 2–3; *see* Dkts. 34–49.)

International students may obtain nonimmigrant temporary visas, or F-1 visas, to study at United States educational institutions. 8 U.S.C. § 1101(a)(15)(F)(i). Students must also obtain Form I-20 Certificates of Eligibility for Nonimmigrant Student Status issued by a school approved by the Student Exchange Visitor Program ("SEVP"), which works with the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE").[1] Once admitted to the country, nonimmigrant students are monitored by Designated School Officials ("DSO") for compliance with extensive regulations, and this compliance information is entered into the Student Exchange Visitor Information System ("SEVIS"). *See*, *e.g.*, 8 C.F.R. §§ 214.2, 214.3, 214.4. Among other requirements, F-1 holders must maintain a full course of study at their approved institution. *Id.* § 214.2. Additionally, most F-1 holders may take "no more than the equivalent of one class of three credits per session, term, trimester, or quarter" online as part of their full course of study. *Id*. § 214.2(f)(6)(i)(G). Failure to comply with these requirements may lead to removal. 8 U.S.C. § 1227(a)(1)(C).

With the onset of the COVID-19 pandemic, Defendants issued several statements and guidance documents through the SEVIS system to provide

---

[1] The Court refers to the named Defendants as well as SEVP as "Defendants."

2

information to nonimmigrant students regarding the pandemic's impact on immigration regulations. First, on January 29, 2020, Defendants issued a broadcast message advising that as to new or initial students like Plaintiffs, schools should "[d]elay their program start date."[2] (Req. for Judicial Notice ("RJN"), Dkt. 13 Ex. A.) On March 9, 2020, Defendants issued a second broadcast message, stating that "SEVP is focused on ensuring that nonimmigrant students are able to continue to make normal progress in a full course of study as required by federal regulations" and that Defendants would be flexible with temporary adaptations. (*Id.* Ex. B.) This guidance, however, was "not intended for new or initial students who are outside the United States." (*Id.*)

Defendants issued two follow-up guidance statements to the March 9, 2020 broadcast message. The first was issued on March 13, 2020; it stated that Defendants would allow "F-1 and/or M-1 students to temporarily count online classes towards a full course of study in excess of the [regulatory limits on online classes]." (*Id.* Ex. C.) On July 24, 2020, Defendants issued the second guidance statement, telling initial students, or those who were active after the March 9, 2020 message, that they would "not be able to enter the United States to enroll in a U.S. school as a nonimmigrant student for the fall term to pursue a full course of study that is 100 percent online." (*Id.* Ex. D.) Schools that were operating "100 percent online" were instructed not to issue Form I-20s for those students. (*Id.*)

---

[2] Plaintiffs filed a Request for Judicial Notice on October 23, 2020 (Dkt. 13). The Court GRANTS the Request as to Exhibits A – E, the directives issued by Defendants. All other requests for judicial notice are denied as moot; the Court does not find it necessary to rely on the underlying documents to resolve the Motion.

Finally, in a "Frequently Asked Questions" document issued in August 2020, Defendants stated that "per the March 2020 guidance" new or initial students who were participating in a hybrid program of study that had in-person and online components, even if those online components were beyond the regulatory limits, were still able to maintain F-1 or M-1 nonimmigrant status. (*Id.* Ex. E.)

Due to the COVID-19 pandemic, Plaintiffs' academic courses are not currently offered in-person. (*See* Dkts. 34–49.) Plaintiffs assert that Defendants' directives therefore prohibit Plaintiffs from entering and remaining in the country. (Compl. ¶ 6.) Hence, Plaintiffs cannot be on campus as required to train, practice, and participate in intercollegiate athletics. (*Id.*; *see* Dkts. 34–49.) Plaintiffs seek a preliminary injunction either (1) "prohibiting the [D]efendants from treating the plaintiffs differently than international students similarly situated but for the fact that such other international students are returning students rather than first-year students" or (2) preventing Defendants from interpreting their July 24, 2020 guidance "to preclude the [Plaintiffs] from qualifying for I-20 Certificates of Eligibility on the grounds that they are engaged in a 100% online course of study." (Dkt. 32-1.)

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy . . . ; it is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689–90 (2007) (citations omitted). It is a device for "preserving the *status quo* and preventing the irreparable loss of rights before judgment." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

4

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). In this Circuit, a plaintiff may obtain a preliminary injunction upon a lesser showing of the merits if the balance of hardships tips "sharply" in his favor, and he has satisfied the other two *Winter* requirements. *See id.* at 1135.

A preliminary injunction can be mandatory or prohibitory. "A mandatory injunction orders a responsible party to take action," while "[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878-79 (9th Cir. 2009). Mandatory injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when "extreme or very serious damage will result" that is not "capable of compensation in damages," and the merits of the case are not "doubtful." *Id.* at 879 (quotation marks omitted). An injunction seeking the prevention of future constitutional violations, for example, is "a classic form of prohibitory injunction." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017); *see also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014) (an injunction against enforcement of a likely unconstitutional state policy was prohibitory rather than mandatory); *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 728, 732 n.13 (9th Cir. 1999) (an injunction against enforcement of a

local ordinance that likely violated federal law was prohibitory rather than mandatory); *Melendres v. Arpaio*, 695 F.3d 990, 994-96, 1000, 1002 (9th Cir. 2012) (affirming a preliminary injunction against an allegedly longstanding practice of detaining individuals based solely on suspicions about immigration status); *McCormack v. Hiedeman*, 694 F.3d 1004, 1009, 1020, 1022 (9th Cir. 2012) (affirming a preliminary injunction barring enforcement against the plaintiff of a longstanding Idaho anti-abortion criminal statute); 42 Am. Jur. 2d *Injunctions* § 5 (2017) ("An injunction is considered prohibitory when the thing complained of results from present and continuing affirmative acts and the injunction merely orders the defendant to refrain from doing those acts.").

Courts are generally more cautious when issuing mandatory preliminary injunctions that would alter the status quo by commanding some positive act from one of the parties. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). Such relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Id.* "The relevant status quo is that 'between the parties pending a resolution of a case on the merits.'" *Arizona Dream Act Coal.*, 757 F.3d at 1060–61 (quoting *McCormack,* 694 F.3d at 1019). In other words, "the 'status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* (emphasis in original).

Here, Plaintiffs are not asking the Court to reinstate the regulation that barred all international students' entry when their courses were offered exclusively online, nor the revised regulation that permits only returning international students' entry. Instead, Plaintiffs seek, in effect, a new regulation that permits all international students' entry, including new first-year students, when their coursework is offered

only online.  In other words, Plaintiffs do not seek an injunction to preserve the status quo; they seek an injunction to alter the status quo by commanding a positive act from Defendants.  *See Dahl*, 7 F.3d at 1403.  Accordingly, the preliminary injunction Plaintiffs seek is a mandatory injunction, which is subject to heightened scrutiny.  *See Arizona Dream Act Coal.*, 757 F.3d at 1060–61; *McCormack,* 694 F.3d at 1019.

### III.   DISCUSSION

#### A.   Standing

Whether a plaintiff has standing is a threshold issue the Court must determine before reaching the merits.  *See Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits.").  "At least one plaintiff must have standing to seek each form of relief requested and that party bears the burden of establishing the elements of standing with the manner and degree of evidence required at the successive stages of the litigation." *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 944 F.3d 773, 786–87 (9th Cir. 2019) (internal citations and quotations omitted).  Plaintiffs may rely on the allegations in their Complaint and any other evidence submitted in support of their motion.  *Id.*  "At this preliminary injunction stage, [Plaintiff] must make a clear showing of each element of standing, proving (1) an injury in fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and that (3) the injury will likely be redressed by a favorable decision." *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (internal quotations and citations omitted).

### 1. Injury in Fact

Plaintiffs have demonstrated that they would suffer a concrete and particularized injury that is actual or imminent in the absence of an injunction, *i.e.*, they would be deprived of their ability to enter the United States, without fear of repercussion, in order to engage in Division 1 athletic competition on behalf of their universities. Entry to the United States is crucial; Plaintiffs can only participate in the rigorous training and competition for their college teams in-person. (Dkt. 10 ¶¶ 3, 6, 9; Dkts. 34–49.) Continuous engagement in such training and competition throughout their college years is necessary for the maintenance and growth of Plaintiffs' athletic opportunities. (*See* Dkt. 10 ¶ 10.) Here, Plaintiffs face the imminent loss of the ability to compete for their schools and with that, the risk of losing not only scholarships and grants, but their athletic careers. (Compl. ¶ 8.)

The Student-Athletes admitted to play NCAA basketball, whose season begins this month, face particularly imminent injury. (Dkt. 10 ¶ 7; Dkts. 35, 36.) As meetings, trainings, and practices have already commenced, these Plaintiffs have suffered injury from their absence already and will continue to do so unless they are soon able to attend these universities in person. (*See*, *e.g.*, Dkts. 35, 49.) As at least one plaintiff has demonstrated a concrete and particularized injury, this element of standing is met.

### 2. Causation and Redressability

Plaintiffs also meet the causation and redressability elements of the standing inquiry. Plaintiffs allege that Defendants' July 24, 2020 guidance required their respective universities to withhold Form I-20s because Plaintiffs' coursework would be conducted entirely online. (Mot. at 9.) Defendants counter that Plaintiffs'

8

injuries are caused by the "unfettered choices made by independent actors not before the courts," namely Plaintiffs' universities, and therefore are insufficient to confer standing. (Opp'n. at 11 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)).)

Although Plaintiffs' injuries, as described above, are related to their universities' decisions to withhold Form I-20s, those decisions were neither "unfettered" nor "independent." Plaintiffs provide evidence that officials at UCLA interpreted the July 24, 2020 guidance to prohibit the issuance of the Form I-20s to Plaintiffs, (Dkt. 11 ¶¶ 7, 9), and Defendants conceded at the hearing on the Motion that the interpretation was accurate.

Finally, the July 24, 2020 guidance was directed at students as well as schools; if a new or initial student's coursework is conducted entirely online, he or she is not permitted to enter the country. (RJN Ex. D.) In other words, even if the universities provided Form I-20s, Plaintiffs would still be unable to enter the country free of uncertainty about the legality of their presence.

Plaintiffs' causation evidence also demonstrates redressability. Redressability does not require certainty, but only a substantial likelihood that the injury alleged will be redressed by a favorable judicial decision. *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013). Defendants correctly point out that Plaintiffs are not guaranteed that their schools will issue Form I-20s even if Plaintiffs succeed on this Motion. It does, however, appear likely they will do so, in light of the evidence that UCLA's decision to withhold its Form I-20s was informed by Defendants' guidance. (Dkt. 11 ¶¶ 7, 9.) Even if that were not the case,

9

injunctive relief nonetheless would provide Plaintiffs with certainty that their presence in the United States would be lawful, thus removing at least one barrier to their entry. *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012) (noting that redressability is not foreclosed by the existence of further obstacles to complete relief as plaintiffs are "entitled to tackle one roadblock at a time").

### B. Success on the Merits

As Plaintiffs have demonstrated standing, the Court turns to Plaintiffs' likelihood of success on the merits. Plaintiffs bring four claims under the Fifth Amendment Due Process Clause, Administrative Procedures Act, and Declaratory Relief Act. The Court addresses each of these claims in turn.

#### 1. Due Process Claim

Plaintiffs allege violations of the Due Process Clause of the Fifth Amendment on the grounds that Plaintiffs have "significant liberty and property interests . . . in their visas and access to educational and athletic programs to which they have been admitted." (Compl. ¶ 111.) "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). As to Plaintiffs' alleged property interest in their visas, they have not shown how this interest would be violated in the absence of the requested relief, where Plaintiffs who received visas still hold them. (*Id*. ¶¶ 17–32; *see* Dkts. 34–49.) In any event, the Supreme Court has held there is no protected interest in entry to the United States, nor in obtaining or continuing to hold a visa. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("[A]n unadmitted and nonresident alien, had no

constitutional right of entry to this country as a nonimmigrant or otherwise."); *see also Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (holding that "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa" and collecting cases).[3]

Plaintiffs also allege they have a protected interest in participating in the athletic programs to which they have been admitted. (Compl. ¶ 111.) Although Plaintiffs bear the burden of demonstrating the likelihood of success on this claim, they provide no legal grounds to find that such an interest exists. *See In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) ("To establish a substantial likelihood of success on the merits, [plaintiff] must show a fair chance of success.") (internal quotations and citations omitted).

Even if Plaintiffs alleged a protected interest, they have not shown they are entitled to raise a constitutional claim. It is well established that "aliens legally *within* the United States may challenge the constitutionality of federal and state actions." *Ibrahim*, 669 F.3d at 994 (emphasis added). Where an "alien" is not located within the territorial boundaries of the United States, their ability to raise constitutional violations is less certain. *Id.* Rather than apply a bright line rule barring aliens from raising claims when located outside the country, courts should

---

[3] Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists. *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18CV00189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have an property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, No. 4:06-CV-01489 (CEJ), 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students).

apply a functional approach considering if the plaintiff had a previous "significant voluntary connection" with the United States. *Id.* at 995.

Plaintiffs contend they have a "substantial voluntary connection" with the United States that entitles them to constitutional protection, (Compl. ¶ 110), relying on *Ibrahim*, where the Ninth Circuit held that a visa-holding student who had temporarily left the country had "voluntarily established a connection to the United States during her four years at Stanford University while she pursued her Ph.D" and thus could pursue claims under the Fifth Amendment. 669 F.3d at 997. Unlike the plaintiff in *Ibrahim,* Plaintiffs here allege a connection based solely on their visas and their admissions to universities in the United States; they do not allege that they have previously entered or resided in the United States, own property in the United States, or have any other existing connections to the United States.

Accordingly, the Court determines that Plaintiffs have not shown a likelihood of success on their Due Process claim.

2. <u>Administrative Procedures Act Claims</u>

Plaintiffs bring two claims under the Administrative Procedures Act (APA).[4] First, Plaintiffs assert that the July 24, 2020 guidance issued by Defendants is

---

[4] In their Supplemental Brief, Defendants contend that the APA alone cannot provide this Court federal subject matter jurisdiction. First, Plaintiffs have brought a constitutional claim that serves as an independent basis for jurisdiction. Second, the Court can exercise jurisdiction over a challenge to a final action by a federal agency pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 704. *See, e.g., Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018). Defendants have not cited any statutory provisions that would otherwise strip the Court of jurisdiction.

arbitrary and capricious. The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action must be the result of reasoned analysis. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983). Under this "narrow standard of review, . . . a court is not to substitute its judgment for that of the agency," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal quotation marks omitted), but instead to assess only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Plaintiffs advance two primary reasons why Defendants' directives must be set aside as arbitrary and capricious. First, Plaintiffs allege they "relied on the

---

"As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (internal citations and quotation marks omitted).

For purposes of this Motion, the Court will assume, without deciding, that the July 24, 2020 guidance is a final agency action. Pursuant to 8 C.F.R. § 214.2(f)(6)(i)(G), there has been a longstanding policy of barring students from entering and remaining in the United States while engaging in online study alone. (*See* Opp'n. at 15). The guidance therefore provides new students with an online course of study the previously unavailable right to enter and remain in the United States so long as they have one in-person course. This policy has been in effect for five months and will likely extend through this academic term as Defendants "will not [be issuing] a temporary final rule impacting F and M students for the fall school term." (RJN Ex. D.)

13

statements made in the March Guidance in moving forward with their plans to come to the United States to study—that DHS-ICE would be flexible and allow international students to pursue their studies in this country without interruption because of transitions to online learning." (Compl. ¶ 95.) Plaintiffs are correct that when changing course, an agency must "be cognizant that *longstanding* policies may have engendered serious reliance interests that must be taken into account." *See Encino Motorcars LLC v. Navarro*, 136 S. Ct. 2117, 2120 (2016) (emphasis added). Here, however, any reliance on the March guidance was misplaced.

First, the March 9, 2020 message from DHS-ICE expressly stated that "[t]his guidance applies to students who are currently enrolled in a program of study *and is not intended for new or initial students who are outside the United States*." (RJN Ex. B (emphasis added).) The March 13, 2020 guidance, which was labeled as a follow up to the March 9 message, did not alter that caveat. (*See id.* Ex. C.) Here, the longstanding policy required nonimmigrant students to complete their program of study in person, rather than fully online or through distance education, continuously applied to Plaintiffs. *See* 8 C.F.R. § 214.2(f)(6)(i)(G).

Plaintiffs also assert that it was arbitrary and capricious for Defendants to provide an exception to the "in person" regulatory requirements for returning students and some initial students while excluding other initial students, like Plaintiffs, whose "full course of study is 100 percent online." (RJN Ex. D.) Even if the Court accepts, for the purposes of this Motion, that Defendants' action was arbitrary and capricious, it would ordinarily lead to the Court setting aside such action and remanding it to the agency. *See* 5 U.S.C. § 706(2)(A) (a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be

. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *see also S.E. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654–55 (9th Cir. 2007), *rev'd on other grounds*, 129 S. Ct. 2458 (2009) (the "normal remedy" for an unlawful agency action is to "vacate the agency's action and remand to the agency to act in compliance with its statutory obligations") (quotation marks and citation omitted).

If the Court were to vacate and remand here, or enjoin enforcement of the guidance until such decision, there would be no change in Plaintiffs' position. Plaintiffs would remain subject to the regulatory scheme set out by 8 C.F.R. § 214.2(f)(6)(i)(G), barring them from entering and remaining in the country if taking all their courses online. Plaintiffs' requested injunctive relief would alter this status quo and requirethe Court to engage in improper substantive policy making. *See Cont'l Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1451 (D.C. Cir. 1988) ("[I]f one thing should be clear, it is that courts are not to engage (at least in the arena of judicial review of agency action) in substantive policymaking."). Accordingly, Plaintiffs have not met their burden of demonstrating that the facts and law clearly favor a grant of the mandatory relief requested. *See Dahl*, 7 F.3d at 1403 (mandatory injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").. The Court declines to grant such relief. *See Ridge Top Ranch, LLC v. U.S. Fish & Wildlife Serv.*, No. CIV. S-13-2462 LKK, 2014 WL 357055, at *6 (E.D. Cal. Jan. 31, 2014) (preliminary injunctive relief based on violation of the APA was inappropriate where it went "far beyond preserving the status quo pending a determination of the merits").

At the hearing on the Motion, Plaintiffs attempted to avoid this result by suggesting the Court could find Defendants' *interpretation* of the July 24, 2020 guidance improper and instead interpret the phrase "course of study" to include Plaintiffs' participation in athletic competition for their respective schools. To impose its own interpretation on the unambiguous language in the July 24, 2020 guidance would still be engaging in "substantive policymaking," however. The Court declines the invitation to do so.

Plaintiffs' second claim under the APA, based on Defendants' alleged failure to comply with notice and comment procedures, fares no better. Under the APA, agencies must provide notice of proposed rulemaking and an opportunity for interested persons to submit comments. *See* 5 U.S.C. § 553. Not all agency actions trigger the notice and comment procedures, however. Substantive or legislative rules that "effect a change in existing law or policy," are subject to the notice and comment rulemaking requirements of Section 553. *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir.1983).

Assuming the July 24, 2020 guidance effected a change in existing policy and is therefore a substantive rule, a limited exception to the notice and rulemaking procedures exists where an agency shows "good cause." *See* 5 U.S.C. § 553. The "inquiry into whether the [Agency] properly invoked 'good cause' proceeds case-by-case, sensitive to the totality of the factors at play." *Alcaraz v. Block*, 746 F.2d 593, 612 (9th Cir. 1984). Agencies face a high bar if they seek to invoke the good cause exception; "[t]he good cause exception is essentially an emergency procedure." *United States v. Valverde*, 628 F.3d 1159, 1164–65 (9th Cir. 2010).

16

On the face of the record here, there is a strong indication that good cause exists. First, the statements and guidance were issued due to the conditions created by an emergency, namely the COVID-19 pandemic. This is evidenced by Defendants' statements, *e.g.*, "SEVP recognizes that the COVID-19 crisis is fluid and rapidly changing" and "SEVP intends to be flexible with temporary adaptations." (RJN Ex. B.) Defendants also made clear that "due to the fluid nature of this difficult situation, this guidance may be subject to change" and that they would "continue to monitor the COVID-19 situation and will adjust [the] guidance as needed." (*Id.* Ex. C.) These statements illustrate the pressing need to issue rules governing active nonimmigrant students whose ability to study in person, a key requirement of their immigration status, was affected by a pandemic. Accordingly, even if Plaintiffs could show the July 24, 2020 guidance effected a change in existing policy and is therefore a substantive rule, Defendants would likely succeed in invoking the good cause exception.

3. Declaratory Relief

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), not that it must do so.[5] The Act is understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). In determining whether a plaintiff's claim is proper, courts consider "whether the facts alleged, under all of

---

[5] Defendants assert that the Declaratory Judgment Act does not by itself confer the Court subject matter jurisdiction. As discussed *supra,* Plaintiffs have established an independent basis for subject matter jurisdiction. *See Nationwide Mut. Ins. Co. v. Liberatore,* 408 F.3d 1158, 1161 (9th Cir. 2005) ("Because the Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction, [plaintiff] was required to plead an independent basis for federal jurisdiction.").

the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

Plaintiffs state that their declaratory relief claim is derivative of their APA claims. (*See* Dkt. 52 at 5.) As the Court finds Plaintiffs have not met their burden of showing a likelihood of success on the merits of these claims, they cannot meet their burden as to the declaratory relief claim.

### 4. Likelihood of Irreparable Harm

"[I]rreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal.*, 757 F.3d at 1068. As discussed *supra*, Plaintiffs have demonstrated that they face imminent and particularized harm from being denied entry to the United States to participate in athletics for their respective universities. They have also submitted individual declarations demonstrating that each Plaintiff would face harm. (*See* Dkts. 34–49.) For most Plaintiffs, practice for their respective sports has already commenced. (*Id.*) Plaintiffs whose practice begins early next quarter are still likely to be unable to participate. (*Id.*) Those Plaintiffs are unable to meet Defendants' requirement that they enroll in at least one in-person course because their courses for next quarter are not being taught in person. (*Id.*) Thus, each of these Plaintiffs is, or will imminently be, harmed by the inability to train and practice with their teams—a critical activity in furthering their athletic careers. (*Id.*) Although Defendants assert that Plaintiffs' alleged harm is not academic or financial in nature, harm to Plaintiffs' athletic careers is sufficient. *See Enyart v. Nat'l Conference of Bar Examiners, Inc.*, No. C 09-5191 CRB, 2010 WL 475361, at *7 (N.D. Cal. Feb.

18

1 4, 2010), *aff'd*, 630 F.3d 1153 (9th Cir. 2011) (finding that risk of "a serious career
2 setback" for plaintiff and the resulting psychological impact were sufficient to
3 establish irreparable harm).

5 Defendants contend that the alleged irreparable harm is based on speculation
6 about future events. (Opp'n. at 21.) Defendants take issue with Plaintiffs'
7 allegation that they are not permitted to enter the country, pointing out that most
8 Plaintiffs hold valid visas and therefore have chosen not to enter the country
9 because of concerns regarding their Form I-20s. (*Id.* at 21–22.) This argument is
10 belied by Defendants' admission that Plaintiffs' visas do not vest them with entry
11 rights absent a current Form I-20. (*Id*. at 20.) And to the extent Defendants argue
12 that the injunctive relief will not prevent irreparable harm because it is up to the
13 universities to issue Form I-20s, this argument too is barred by the admission that
14 Defendants' own policy requires the universities to defer issuance of the forms.

16     5. **Balance of Equities and Public Interest**
17 Finally, Plaintiffs must establish that the "balance of equities tips in [their]
18 favor, and that an injunction is in the public interest." *See Winter*, 555 U.S. at 20.
19 "When the government is a party, [the balance of the equities and public interest]
20 factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.
21 2014).

23 As discussed above, Plaintiffs will face serious consequences if not allowed
24 to enter the United States to begin their participation in collegiate athletics while
25 attending classes remotely. (Mot. at 22–24.) Plaintiffs recognize that the pandemic
26 also presents pressing health concerns, but they emphasize the extensive testing and

19

safety protocols in place to protect student athletes and those around them from COVID-19. (*See* Dkts. 34–49.) Whatever the nature and extent of these safety measures, however, the entry into and presence of Plaintiffs in the United States poses a risk. Their interest in furthering their educational and athletic goals must be weighed in the context of the unprecedented destruction wreaked on the entire country by the forces of the COVID-19 pandemic, and balanced against the Defendants' interest during this time in controlling the enforcement of immigration laws and the proper application of regulations applying to foreign nationals. (Opp'n. at 23-24.)

Finally, as discussed above, the relief requested goes beyond the scope of what the Court properly can grant. (*See* Dkt. 51 at 9–10.) It follows that the public interest is not served when a court exceeds its authority by usurping the role of an agency.

## IV. CONCLUSION

As the factors discussed above, taken as a whole, weigh against the mandatory injunctive relief sought, the Court DENIES Plaintiffs' Motion.

**IT IS SO ORDERED.**

Dated: 11/20/20

Virginia A. Phillips
United States District Judge