UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doe 1, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. Department of Homeland Security, et al.,<br><br>    Defendants. | 2:20-cv-09654-VAP-AGRx<br><br>**Order GRANTING Motion to Dismiss (Dkt. 59).** |

Defendants U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, David Pekoske, and Tae D. Johnson filed a Motion to Dismiss on January 21, 2021. (Mot., Dkt. 59.) Plaintiffs, Does 1 through 16, filed their Opposition to the Motion on February 1, 2021. (Opp'n, Dkt. 61.) Defendants filed their Reply on February 8, 2021. (Reply, Dkt. 64.) After considering all papers filed in connection to the Motion, as well as the arguments presented at hearing, the Court GRANTS the Motion.

**I. BACKGROUND**

On November 20, 2020, the Court issued an Order denying Plaintiffs' Motion for Preliminary Injunction ("Preliminary Injunction Order"), and Plaintiffs appealed to the Ninth Circuit Court of Appeals. (Dkts. 53, 54.) After expedited proceedings, the Ninth Circuit issued a Memorandum affirming the Preliminary Injunction Order on January 22, 2021 ("Memorandum"). (Dkt. 60.) That same

week, Defendants filed the present Motion. In light of the Ninth Circuit's disposition, Plaintiffs have conceded certain issues and narrowed the scope of their claims: They do not challenge dismissal of their APA claims based on the "guidance statements" issued by Defendants from January through August 2020 (*see* Opp'n at 6). Plaintiffs' claims for declaratory relief and violation of the Due Process Clause of the Fifth Amendment remain in dispute.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Rule 12(b)(1)

A plaintiff must "have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The "irreducible constitutional minimum" of Article III standing has three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

The plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements. *See id*. at 561. Article III standing bears on the court's subject matter jurisdiction and is subject to challenge under Federal Rule of Civil Procedure 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). If the Court finds that it lacks subject matter jurisdiction at any time in the litigation, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

**A. Motion to Dismiss**

As explained above, Plaintiffs do not dispute dismissal of their claims under the APA. The Court therefore turns to whether dismissal of Plaintiffs' remaining due process claim, and their derivative claim for declaratory relief, are warranted for lack of jurisdiction or failure to state a claim.[1]

### 1. Standing

"Where standing is raised in connection with a motion to dismiss, the court is to accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party." *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009). There is no dispute as to whether Plaintiffs have suffered an injury in fact; Defendants challenge the causation and redressability elements of standing. (Mot. at 9–13.)

Defendants assert that Plaintiffs cannot show causation because their injuries are caused by their respective universities' decisions to cancel or delay the issuance of Plaintiffs' Forms I-20. (*Id.* at 9–10.) Causation, however, can be established "even if there are multiple links in the chain as long as the chain is not hypothetical or tenuous." *Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (internal quotations and citations omitted). As the Court stated in its Preliminary Injunction Order, the universities' decisions to withhold the Forms are not as "unfettered" as Defendants contend. (Dkt. 53 at 9.) Plaintiffs allege that the guidance statements

---

[1] The Ninth Circuit affirmed the Court's ruling that Plaintiffs have standing to pursue their claims. (Memorandum at 2.) The "law of the case" doctrine, however, does not preclude the Court from reassessing standing here. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007).

4

issued by Defendants between January and August 2020 dictated certain terms for their universities to issue Forms I-20 to international students. (*Id.*)

As for redressability, Plaintiffs "must show only that a favorable decision is *likely* to redress his injury, not that a favorable decision will inevitably redress his injury." *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994) (emphasis in original). Plaintiffs request declaratory and injunctive relief prohibiting Defendants from enforcing the guidance statements adversely against them, *i.e.* by allowing their universities to issue them Forms I-20. (*See* Compl. at 26–27.)

Defendants contend that "Plaintiffs have not shown that Defendants' actions are the only barrier to their participation in collegiate athletics" because the relief Plaintiffs request does not guarantee that their universities will issue the Forms I-20 or that health conditions due to the COVID-19 crisis will allow Plaintiffs to participate in their athletics programs. (Mot. at 11–12.) While Defendants point out plausible obstacles that stand between the relief requested and full redress of Plaintiffs' injuries, redressability is not foreclosed by the existence of such further obstacles to complete relief. As the Court noted in its Preliminary Injunction Order, Plaintiffs are "entitled to tackle one roadblock at a time." (Dkt. 53 at 10 (citing *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012).)[2]

---

[2] Defendants contend that Does 9, 13, and 15 should be dismissed because they do not have F-1 visas and thus cannot show causation or redressability. Defendants, however, state in the very same brief that the issuance of Forms I-20, at issue in this litigation, are prerequisites to a valid visa. (Mot. at 3 n.2.) That the visas pose a further obstacle to these Plaintiffs ability to enter the country does not prevent them from establishing standing. *See Ibrahim*, 669 F.3d at 993.

5

Finally, Defendants attack the allegations in the Complaint as insufficiently particular to establish standing. Defendants point to the absence of individualized allegations addressing whether a Plaintiff is in possession of a valid visa or Form I-20, what sport or team he or she is a member of, and when the athletic season begins and ends. (Mot. at 13.) Plaintiffs have alleged relevant facts pertaining to each individual Plaintiff in their Complaint; that Plaintiffs' circumstances are similar does not render these allegations insufficiently particular. (See Compl. ¶¶ 17–33.) Construing the Complaint liberally, as the Court must, Plaintiffs have sufficiently alleged injury, causation, and redressability. *See Levine*, 587 F.3d at 991.

### 2. <u>Due Process Claim</u>

Two threshold issues exist with respect to Plaintiffs' due process claim: first, whether they are entitled to bring a constitutional claim as nonresident foreign nationals under *Ibrahim;* and second, whether they were deprived of a protected liberty or property interest.[3] As to the first question, the Court ruled in its Preliminary Injunction Order that Plaintiffs, as nonresident foreign nationals, did not demonstrate a right to bring their due process claim under *Ibrahim*. (Dkt. 53 at 12.) In that case, the Ninth Circuit held that a foreign-national plaintiff located outside the United States established a voluntary connection with the United States during her four years pursuing her Ph.D. at Stanford University and thus had the right to assert constitutional claims under the First and Fifth Amendments. *See*

---

[3] Plaintiffs' Opposition conflates the two threshold issues. Plaintiffs claim that the Ninth Circuit remanded for this Court's consideration the question of whether Plaintiffs have established the substantial voluntary connections to the United States required under *Ibrahim*. (Opp'n at 7.) The Ninth Circuit, however, declined to reach that question because it determined that Plaintiffs did not assert any constitutionally protected interest. (Memorandum at 5 n.2.)

*Ibrahim*, 669 F.3d at 997.[4] Here, Plaintiffs' connections are more attenuated than those alleged in *Ibrahim*. As stated in the Court's Preliminary Injunction Order, Plaintiffs do not assert any past or present connections with the United States beyond their admissions to their universities and athletic programs. (Dkt. 53 at 12.) Plaintiffs are better described as seeking to establish a voluntary connection rather than currently possessing one.[5] *See Ibrahim*, 669 F.3d at 997 ("We do not hold that tourists, business visitors, and all student visa holders have the same connection to the United States as Ibrahim.").

Even if the Court were to find that Plaintiffs could bring a due process claim, they must also assert a protected interest. In their Complaint, Plaintiffs allege that Defendants deprived them of two such interests: their visas and "access to educational and athletic programs to which they have been admitted[,] recruited and . . . in which they have invested significant time, energy, and money." (Compl. ¶ 111.) Plaintiffs have not demonstrated a property interest in their visas.[6] (Dkt. 53 at 10; Memorandum at 5.) Plaintiffs do not assert otherwise in their Opposition. (*See*

---

[4] The Ninth Circuit later summarized the reasons for its holding as follows: "We held that Dr. Ibrahim had [a significant voluntary] connection because of her time at Stanford University, her continuing collaboration with professors in the United States, her membership in several professional organizations located in the United States, the invitations for her to return, and her network of close friends in the United States." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1162 (9th Cir.) (en banc).

[5] In their Opposition, Plaintiffs assert that at least some of them have visited the United States for official recruiting visits. (Opp'n at 8.) Even if the Court were to grant leave to amend, the assertion of such facts would not cure the deficiencies discussed herein with respect to Plaintiffs' alleged protected interest.

[6] The Court acknowledges that a plaintiff may have a property interest in a visa petition where, pursuant to statute or regulation, the granting of the petition is nondiscretionary. *See Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013). Here, Plaintiffs do not argue they fit within this category.

Opp'n at 9.) Accordingly, the Court will consider whether Plaintiffs have stated a viable interest in pursuing their participation in collegiate athletic programs.

When moving for a preliminary injunction, Plaintiffs provided no legal authority for finding a constitutionally protected interest in accessing their athletic programs. (Dkt. 53 at 11.) The Ninth Circuit affirmed, stating "we also find none." (Memorandum at 5.) Plaintiffs now rely on three cases to support a finding of a protected interest: *Ibrahim*; *Haitian Centers Council Inc. v. McNary*, 969 F.2d 1326 (2d Cir. 1992), *vacated as moot sub. nom. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 918 (1993); and *Board of Regents v. Roth*, 408 U.S. 564 (1972).

*Ibrahim* and *Haitian Centers Council* are of no avail to Plaintiffs. In *Ibrahim*, the Ninth Circuit went no further than determining plaintiff had a significant voluntary connection with the United States. 669 F.3d at 997. It "express[ed] no opinion on the validity of the underlying constitutional claims." *Id*. And in *Haitian Centers Council,* the liberty interest at issue—the "freedom not to be sent back to conditions of persecution or death without a fair adjudication that they are not *bona fide* asylees"—bears little similarity to the interest alleged here. 969 F.2d at 1341.

Finally, Plaintiffs rely on the Supreme Court's decision in *Board of Regents v. Roth*, which addressed protected rights in the context of employment. 408 U.S. at 564. This authority is inapposite as well. Defendants are not Plaintiffs' employers nor have they discharged or defamed Plaintiffs in a manner inconsistent with due process of law. *See id.* at 574.

Perhaps the most potentially analogous authority is *Schware v. Board of Bar Examiners*, 353 U.S. 232, 237–38 (1957), cited in *Roth*, where the Supreme Court recognized a constitutionally protected interest in the opportunity to be admitted to the practice of law. Nevertheless, Plaintiffs' interest in pursuing their careers and educations in the United States through participating in collegiate athletics is not sufficiently similar to the interest identified in *Schware*, particularly as Plaintiffs are unadmitted foreign nationals who have not demonstrated a right of admission to the United States. The Court declines Plaintiffs' invitation to determine such an interest exists as a matter of first impression. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009) ("[T]he mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it.") (citing *Reno v. Flores,* 507 U.S. 292 (1993)); *see also Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) (finding that where plaintiff did not have a protected interest in obtaining security clearance from the government, she could not assert a protected interest in pursuing employment that required said clearance).

Dismissal of Plaintiffs' due process claim and derivative claim for declaratory relief is therefore appropriate. As Plaintiffs do not oppose dismissal of their APA claims, the Complaint must be dismissed in its entirety.

**B. Leave to Amend**

Plaintiffs now contend that statements made by Defendants' counsel at the November 6, 2020 hearing on the Motion for Preliminary Injunction before this Court constitute separate agency action that violates the APA. (*See* Opp'n at 20–24.) The Court construes this as a request for leave to amend the Complaint to add such claims. "Although leave to amend should be given freely, a district court may

dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

The threshold question is whether the statements at the hearing are "agency action" reviewable by the Court. The Court acknowledges that the term "agency action" has a broad sweep. *See, e.g., FTC v. Standard Oil Co. of California,* 449 U.S. 232, 238 n.7 (1980); *Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 478 (2001). The term, however, "is not so all-encompassing as to authorize us to exercise judicial review [over] everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (internal quotations and citation omitted).

Plaintiffs assert that during the hearing on the Preliminary Injunction motion, Defendants adopted a new definition of "full course of study," a purportedly undefined term used in Defendants' guidance statements. (*See* Opp'n at 23.) Plaintiffs contend that the definition advanced by Defendants renders a "full course of study" dependent on the award of course credit. (*Id.*) According to Plaintiffs, Defendants by so arguing engaged in "agency action" reviewable under the APA. Plaintiffs' position is unpersuasive. The term "full course of study" is defined by regulation as "undergraduate study at a college or university certified by a school official to consists of at least twelve semester or quarter hours of instruction per academic term." 8 C.F.R. § 214.2(f)(6)(i)(B). Thus, satisfaction of a full course of study has long been understood as dependent on instructional credit. The Court's review of the statements made by Defendants' counsel reveals no departure from this definition. Accordingly, there is no "agency action" for the Court to review.

*Indep. Equip. Dealers*, 372 F.3d at 428 (a statement by an agency that simply restates an established interpretation "tread[s] no new ground" and "le[aves] the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy"); *see also Golden & Zimmerman, LLC v. Dommenech*, 599 F.3d 426, 432 (4th Cir. 2010).

Plaintiffs also allege that Defendants engaged in reviewable agency action by announcing they would not view Plaintiffs, who are not awarded course credit for their athletics, as engaged in a full course of study that was not entirely online. (Opp'n at 21.) Defendants assert that counsel was simply advancing a legal argument in response to hypotheticals posed by the Court and did not engage in agency action. (Reply at 8–10.) Case law supports Defendants' position.

Two conditions generally must be satisfied for agency action to be considered final, and thus judicially reviewable, under the APA: "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 577 (9th Cir. 2019) (internal quotations and citation omitted). Courts have thus declined to review agency action where the agency "merely expresses its view of what the law requires of a party, even if the view is adverse to the party." *AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001). This is particularly true where, as here, the agency's statement is based on the presentation of a hypothetical factual situation as opposed to fact-finding by the agency. *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638–39 (6th Cir. 2004); *see also Ass'n of Am. Med. Colls. v.*

11

*United States*, 217 F.3d 770, 780–81 (9th Cir. 2000) (holding that a letter from the general counsel of the Department of Health and Human Services was not final where facts remained to be developed); *Nat'l Res. Def. Council v. FAA*, 292 F.3d 875, 882 (D.C. Cir. 2002) (holding that an opinion letter issued by the FAA "based on a hypothetical factual situation" presented to the agency by the parties was "not appropriate for review").[7]  As Plaintiffs do not allege any agency action which this Court may review under the APA, granting leave to amend the Complaint would be futile.

## IV.  CONCLUSION

The Court therefore GRANTS the Motion.  The Complaint is DISMISSED WITH PREJUDICE.  The Court will issue a judgment concurrently.

**IT IS SO ORDERED.**

Dated:   2/25/21

Virginia A. Phillips
United States District Judge

---

[7] Plaintiffs' Opposition highlights one of the reasons for finding these preliminary opinions improper for review.  Plaintiffs contend for the first time that their athletic participation constitutes on-campus employment that should be counted towards a "full course of study." (Opp'n at 23.)  This was not a fact presented in the Court's limited hypothetical.